FILED

25 APR 01 PM 4: 04

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Mark L. Shurtleff USB # 4666
UTAH ATTORNEY GENERAL
Raymond A. Hintze USB #1501
Chief Civil Deputy Attorney General
J. Mark Ward USB # 4436
Assistant Attorney General
236 State Capitol Building
Salt Lake City, Utah 84114
Telephone 801-538-1191
Facsimile 801-538-1121

Thomas R. Lee USB # 5991
1395 E. Canberra Dr.
Lindon, Utah 84042
Telephone 801-378-9024
Facsimile 801-378-5893

Gene C. Schaerr
Michael S. Lee USB #8108
Jay T. Jorgensen USB #8216
SIDLEY & AUSTIN
1722 Eye St. NW
Washington, DC 20006
Telephone 202-736-8000
Facsimile 202-736-8711

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

STATE OF UTAH, Michael O. Leavitt, Governor,
Olene S. Walker, Lieutenant Governor, Mark L.
Shurtleff, Utah Attorney General, L. Alma Mansell,
President of the Utah Senate, Martin R. Stephens,
Speaker of the Utah House, Mike Dmitrich, Utah
Senate Minority Leader, Ralph Becker, Utah House
Minority Leader, Orrin G. Hatch, United States
Senator, Robert F. Bennett, United States Senator,
James V. Hansen, Member of Congress,
Christopher B. Cannon, Member of Congress,
James Matheson, Member of Congress, Blake J.
Russon, Michael Wayne Andersen, Brent & Jean
McGhie,

Plaintiffs,

v.

Donald L. EVANS, Secretary of Commerce,
William G. Barron, Acting Director, United States
Census Bureau,

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Case No.:   **2:01CV002926**

**THREE-JUDGE PANEL
REQUESTED PURSUANT
TO 28 U.S.C. § 2284**

Plaintiffs, the State of Utah ("Utah" or the "State") and several of its officers, representatives, and residents, hereby submit this Complaint and allege as follows in support of their claims for relief:

## NATURE OF THE CASE

This is an action for declaratory and injunctive relief arising under Public Law Number 105-119, Title II, § 209; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("the APA"); the Census Act, 13 U.S.C. § 1 *et seq.*; Article I, Section 2, Clause 3 of the United States Constitution; and Section 2 of the Fourteenth Amendment against Donald L. Evans, in his official capacity as the Secretary of Commerce and William G. Barron, in his official capacity as the Acting Director of the United States Census Bureau (collectively, "Defendants"). The present action challenges the Defendants' decision to supplement the 2000 Census apportionment count with data derived from statistical imputation, a form of statistical sampling. That decision deprived Utah of an additional member of Congress to which the State is entitled.

1.      This Complaint stems from the actions of the Defendants, who are the executive officers charged with conducting the decennial census. As such, the Defendants are constitutionally charged with performing an "actual Enumeration" of the people of the United States every ten years. *See* U.S. Const. Art. 1, § 2, cl. 3.

2.      One of the most important functions that the Defendants perform is to determine the current "apportionment population." The apportionment population is the "total

2

resident population (citizens and non-citizens) of the 50 states." *See* U.S. Census Bureau, http://www.census.gov/population/www/censusdata/apportionment/faq.html. It is on the basis of this count that seats in the United States House of Representatives are reapportioned among the fifty states.

3.    In conducting the 2000 Census, Defendants used a statistical sampling procedure known as "imputation" to add to the apportionment population approximately 1.2 million persons nationwide who were not actually enumerated by traditional methods of enumeration. Statistical imputation cannot be reconciled with the Census Act or the Apportionment Clause of the United States Constitution. Plaintiffs therefore respectfully seek (1) a declaration from this Court that the Census Bureau's decision to supplement the 2000 Census apportionment count with data derived from statistical imputation is unconstitutional under the Apportionment Clause and illegal under the Census Act; and (2) an injunction requiring Defendants to remove from the apportionment count all population data derived from statistical imputation.

## THE PARTIES

4.    The State of Utah ("Utah") entered the Union on January 4, 1896 as the 45th state.

5.    Michael O. Leavitt is the Governor of Utah.

6.    Olene S. Walker is the Lieutenant Governor of Utah.

7.    Mark L. Shurtleff is the Attorney General of Utah.

3

8.    L. Alma Mansell is the President of the Utah State Senate.

9.    Martin R. Stephens is the Speaker of the Utah State House of Representatives.

10.   Mike Dmitrich is the Utah State Senate Minority Leader.

11.   Ralph Becker is the Utah State House Minority Leader.

12.   Orrin G. Hatch is the senior United States Senator from the State of Utah.

13.   Robert F. Bennett is the junior United States Senator from the State of Utah.

14.   James V. Hansen, is a Representative from the First Congressional District of Utah.

15.   James Matheson is a Representative from the Second Congressional District of Utah.

16.   Christopher B. Cannon is a Representative from the Third Congressional District of Utah.

17.   Donald L. Evans is the Secretary of the United States Department of Commerce.

18.   William G. Barron is the Acting Director of the United States Census Bureau.

## JURISDICTION AND VENUE

19.     Jurisdiction in this Court is proper under 28 U.S.C. § 2284 and Pub. L. 105-119, Title II, § 209 ("Section 209"). Section 209 explicitly provides a cause of action for "any person aggrieved by the use of any statistical method in violation of the Constitution or provision of law . . . in connection with the 2000 or any later decennial census, to determine the population for purposes of the apportionment or redistricting of members of Congress." Pursuant to these statutory provisions, Plaintiffs request that a three-judge district court be convened.

20.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(2) & (3).

## GENERAL ALLEGATIONS

21.     Article I, Section 2, Clause 3 of the United States Constitution, as modified by the Fourteenth Amendment, directs that every ten years Congress (or its designee) must conduct an "actual Enumeration" of the number of persons in each State "in such manner as [Congress] shall by Law direct." On the basis of the census, each state is allotted a number of Representatives in Congress proportional to its population.

22.     Pursuant to its constitutional authority to determine how the "actual Enumeration" of the population should be conducted, Congress enacted the Census Act, 13 U.S.C. § 1 *et seq.* (the "Act"). The Act provides that the Secretary of Commerce "shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year." 13 U.S.C. § 141(a). It further provides that "[t]he tabulation of total population by States . . . as required for the apportionment of Representatives in Congress among

5

the several States shall be completed within 9 months after the census date and reported by the Secretary to the President of the United States." *Id.* § 141(b). The President must then "transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled." 2 U.S.C. § 2a(a). Within 15 days, the Clerk of the House of Representatives must "send to the executive of each State a certificate of the number of Representatives to which each State is entitled." *Id.* § 2a(b).

23.     The Census Act also speaks directly to the method of enumeration to be employed in the census. It provides that "[e]xcept for the determination of population for purposes of apportionment of Representatives in Congress among the several States, the Secretary shall, if he considers it feasible, authorize the use of the statistical method known as 'sampling' in carrying out the provisions of this title." 13 U.S.C. § 195. In other words, statistical sampling is authorized where it is "feasible" for purposes other than apportionment, but the apportionment count must be conducted by traditional methods of enumeration, and not by statistical estimation.

24.     Throughout most of the history of the census, the "actual enumeration" of the population has been conducted by questions asked by census enumerators to heads of households. Until 1964, census enumerators were required to "visit personally each dwelling house in [their] subdivision[s]" in order to obtain "every item of information and all particulars required for any census or survey" conducted in connection with the census. Act. of Aug. 31, 1954, § 25(c), 68 Stat. 1012, 1015. In 1964, Congress relaxed this requirement slightly in authorizing census enumerators to replace personal visits with forms delivered and returned via the Postal Service. Act of Aug. 31, 1964, 78 Stat. 737.

6

25.     Despite the authority to conduct the census through the mail, "there was no suggestion from any quarter that this change altered the prohibition in § 195 on the use of statistical sampling in determining the population for apportionment purposes." *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 337 (1999). Rather, the Census Act continued to require an "actual enumeration" of the apportionment population by traditional methods of enumeration (personal visits or mailed questionnaires), and to permit statistical sampling only for non-apportionment purposes. *Id.* In fact, the Census Bureau itself long adhered to the view that the Census Act "clearly" continued the "historical precedent of using the 'actual Enumeration' for purposes of apportionment, while eschewing estimates based on sampling or other statistical procedures, no matter how sophisticated." 45 Fed. Reg. 69366, 69372 (1980).

**The Census Bureau's Statistical Sampling Proposal for the 2000 Census**

26.     In or about 1997, however, the Census Bureau abandoned this position and formulated a plan to make extensive use of statistical sampling to supplement the data obtained through traditional census methods.

27.     One aspect of the Bureau's sampling proposal fell under the "Nonresponse Followup program," which was to proceed in three steps. Under the first step, the Bureau would "send census forms to all households, as well as make forms available in post offices and in other public places." *House of Representatives*, 525 U.S. at 324. The Bureau anticipated "that 67 percent of households [would] return the forms." *Id.*

28. Next, under the second step, the Bureau planned "to divide the population into census tracts of approximately 4,000 people that have 'homogeneous population characteristics, economic status, and living conditions,'" and to collect census data from a random sample of the households that did not respond to the forms sent by mail by making personal visits:

> The Bureau would then visit a randomly selected sample of nonresponding housing units, which would be "statistically representative of all housing units in [a] nonresponding tract." The rate of nonresponse follow-up in a tract would vary with the mail response rate to ensure that the Bureau obtain[ed] census data from at least 90 percent of the housing units in each census tract. For instance, if a census tract had 1,000 housing units and 800 units responded by mail, the Bureau would survey 100 out of the 200 nonresponding units to obtain information about 90 percent of the housing units. However, if only 400 of the 1,000 housing units responded by mail, the Bureau would visit 500 of the 600 nonresponding units to achieve the same result.

*Id.*

29. Finally, under the third step, "[t]he information gathered from the nonresponding housing units surveyed by the Bureau would then be used to estimate the size and characteristics of the nonresponding housing units that the Bureau did not visit." *Id.* at 324-25. "Thus, continuing with the first example, the Bureau would use information about the 100 nonresponding units it visits to estimate the characteristics of the remaining 100 nonresponding units on which the Bureau has no information." *Id.* at 325.

## Legislative and Judicial Responses to the Bureau's Proposal

30. The Census Bureau's announcement of its plan to make extensive use of statistical sampling in the 2000 census spawned both legislative and judicial responses. In 1997, Congress passed, and President Clinton signed, a bill providing for the creation of a

"comprehensive and detailed plan outlining [the Bureau's] proposed methodologies for conducting the 2000 Decennial Census and available methods to conduct an actual enumeration of the population," including an explanation of any statistical methodologies that may be used. Tit. VIII, 111 Stat. 217.

31.    Pursuant to this requirement, the Secretary of Commerce issued the Census 2000 Report, detailing the above proposal for extensive use of statistical estimation.

32.    After receiving the Census 2000 Report, Congress enacted § 209, 111 Stat. 2482 ("Section 209"). As noted above, Section 209 provides for expedited consideration in a three-judge court of any claim challenging "the use of any statistical method in violation of the Constitution or any provision of law" in the apportionment count conducted by the Census Bureau.

33.    Under these provisions, the plaintiffs in the *House of Representatives* case challenged certain aspects of the Census Bureau's proposed use of statistical sampling. In its 1999 decision in that case, the United States Supreme Court struck down those aspects of the Bureau's statistical sampling procedures. The Court held that "the proposed use of statistical sampling to determine population for purposes of apportioning congressional seats among the States violates the [Census] Act." *Id.* at 334. In so doing, the Court noted that [f]rom the very first census . . . Congress has prohibited the use of statistical sampling in calculating the population for purposes of apportionment," and that the current Census Act "maintains [that] prohibition." *Id.* at 335, 339.

34.    Because it found that the challenged conduct was prohibited by the Census Act, *see* 13 U.S.C. § 195, the Court found it "unnecessary to reach the constitutional question presented." *Id.* at 343.

**The Census Bureau's Use of Statistical Imputation in the 2000 Census**

35.    The Census Bureau abandoned the broad statistical sampling methodology that the Supreme Court expressly struck down in *House of Representatives*. It did not, however, eliminate statistical sampling from the 2000 apportionment count entirely.

36.    The statistical imputation methodology employed in the 2000 census is substantively indistinguishable from the sampling methodology struck down in *House of Representatives*. Like the methodology struck down by the Supreme Court, imputation attempts to estimate persons who are not actually enumerated by traditional methods of enumeration. It seeks to do so by use of a sample or statistical model.

37.    The broad sampling methodology struck down in *House of Representatives* proposed to estimate the number of persons in the 10% of the households within each census tract that would not be counted by traditional methods of enumeration. Similarly, the imputation program, as implemented in the 2000 census, estimated the number of persons in households that were not counted by traditional methods of enumeration.

38.    Specifically, under the statistical imputation methodology employed in the 2000 census, the Census Bureau utilized the "hot deck" method. Using the hot deck method, the Bureau estimates the size of unenumerated households by reference to data gathered from a

single household within the same census tract—the household that was geographically closest to the one being estimated and that was actually enumerated by traditional methods. In other words, where the Census Bureau failed to actually enumerate a household, it simply *assumed* that that residence had the same number of occupants as its closest neighbor.

39.    By supplementing the apportionment count with data representing persons that were not actually enumerated, but were merely estimated on the basis of a statistical model, the Census Bureau contravened the requirements of the Census Act, as conclusively interpreted by the Supreme Court in 1999. *House of Representatives*, 525 U.S. at 338 & 343.

40.    Defendants used statistical imputation to add approximately 1.2 million "persons" to the apportionment count in the 2000 census.

41.    Had Defendants not supplemented the apportionment count with statistical sampling estimates under the imputation methodology, Utah would have been entitled to 4 seats in the United States House of Representatives beginning in 2003, North Carolina would have been entitled to 12 seats, and no other state's apportionment would have been affected. In other words, Defendants' utilization of statistical sampling estimates had the effect of assigning an additional seat in Congress to North Carolina at Utah's expense, and otherwise did not affect apportionment.

**CLAIMS FOR RELIEF**

**Count I**
**(U.S. Constitution Article I, Section 2, Clause 3,**
**U.S. Constitution, Amend. XIV, Sec. 2)**

42.     Plaintiffs reallege paragraphs 1-41 as if set forth fully herein.

43.     The Constitution requires that Defendants conduct an "actual

Enumeration" of the "whole number of persons in each State." U.S. Const. Art. I, Sec. 2, Cl. 3;

U.S. Const. Amend. XIV, § 2.  This procedure is necessary so that Members of the U.S. House

of Representatives may be "apportioned among the several States ... according to their respective

Numbers." U.S. Const. Art. I, § 2, Cl. 3; *see also* U.S. Const. Amend. XIV, § 2.

44.     Defendants violated these constitutional requirements in supplementing

the actual enumeration of the 2000 apportionment population with statistical sampling estimates

under the imputation methodology.  In so doing, Defendants deprived Plaintiffs of their rightful

representation in the House of Representatives and in the Electoral College.

**Count II**
**(Census Act)**

45.     Plaintiffs reallege paragraphs 1-44 as if set forth fully herein.

46.     The Census Act forbids Defendants from supplementing the actual

enumeration of the apportionment population with statistical sampling estimates.  *See*, e.g., 13

U.S.C. § 195.

47.     Defendants violated this statutory prohibition by supplementing the actual

enumeration of the 2000 apportionment population with statistical sampling estimates under the

imputation methodology.  In so doing, Defendants deprived Plaintiffs of their rightful representation in the House of Representatives and in the Electoral College.

### Count III
### (Pub. L. No. 105-119, Title II § 209)

48.     Plaintiffs reallege paragraphs 1-47 as if set forth fully herein.

49.     In Section 209, Congress found that "the use of statistical sampling or statistical adjustment in conjunction with an actual enumeration to carry out the census with respect to any segment of the population [creates] the risk of an inaccurate, invalid, and unconstitutional census."  Pub. L. No. 105-119, Title II § 209(a)(7).

50.     In accordance with its recognition that statistical sampling or adjustment violates both the Census Act and the Constitution, Congress provided a cause of action allowing "[a]ny person aggrieved by the use of any statistical method in violation of the Constitution or any other provision of law … in connection with the 2000 or any later decennial census" to bring "a civil action [to] obtain declaratory, injunctive, and any such other appropriate relief against the use of such method."  Pub. L. No. 105-119, Title II § 209(b).

51.     The Census Bureau's use of imputation in the conduct of the apportionment count is a statistical method that violates the Constitution and Census Act within the meaning of Section 209.  Plaintiffs are aggrieved by Defendants' use of imputation in the conduct of the apportionment count in that imputation deprived Plaintiffs of their rightful representation in the House of Representatives.

13

## Count IV
### (The Administrative Procedure Act)

52.    Plaintiffs reallege paragraphs 1-51 as if set forth fully herein.

53.    The right to be free from arbitrary and capricious government action is protected not only by the Constitution, but also by the Administrative Procedure Act. *See* 5 U.S.C. §§ 701-706. Likewise, the APA protects against final agency actions that infringe on the constitutional rights of equal protection and equal representation. *See* 5 U.S.C. § 706.

54.    Defendants have failed to provide a rational explanation or basis for their decision to estimate the number of persons in households not enumerated by traditional methods of enumeration, and have failed to reconcile this decision with the Census Act, as interpreted by the Supreme Court in the *House of Representatives* case. Likewise, Defendants have failed to reconcile their decision to use statistical imputation with the constitutional requirement of an actual enumeration.

55.    Defendants' actions in supplementing the actual enumeration of the apportionment population with statistical estimates under the imputation methodology are arbitrary and capricious and infringe on the rights of equal protection and equal representation.

56.    These actions deprive Utah of political representation to which the State and its citizens are entitled. Defendants' actions must therefore be reversed under 5 U.S.C. §§ 701-706.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, by their undersigned counsel, request that the Court grant the following relief:

      (a) enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that the Census Bureau's decision to supplement the actual enumeration of the 2000 apportionment population with statistical sampling estimates under the imputation methodology violates Article I, Section 2, Clause 3 of the United States Constitution; Section 2 of the Fourteenth Amendment; the Census Act; Title II, Section 209; and the Administrative Procedure Act.

      (b) enter an injunction requiring Defendants to remove from the 2000 apportionment count all data derived from statistical sampling estimates under the imputation methodology, to recalculate a new apportionment of seats in the House of Representatives, and to submit that apportionment calculation to the President for subsequent transmittal to the clerk of the House and, from him, to the States; and

      (c) grant such further relief as this Court deems just and proper.

DATED this _____ day of April, 2001.

Respectfully submitted,

Mark L. Shurtleff
Attorney General of Utah
Raymond A. Hintze
Chief Civil Deputy Attorney General
J. Mark Ward
Assistant Attorney General

Thomas R. Lee
1395 E. Canberra Dr.
Lindon, UT 84042

Gene C. Schaerr
Michael S. Lee
Jay T. Jorgensen
SIDLEY & AUSTIN
1722 Eye St., NW
Washington, DC 20006