FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

SEP 0 7 2001

MARKUS B. ZIMMER, CLERK
BY _____
DEPUTY CLERK

STUART E. SCHIFFER
Acting Assistant Attorney General
SANDRA M. SCHRAIBMAN
AMY M. ALLEN
Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, 901 E Street, N.W.
Washington, D.C. 20044
Telephone: (202) 514-4523
Facsimile: (202) 616-8202
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| **STATE OF UTAH, et al.,** | ) |
| **Plaintiffs,** | ) Civil No. 2:01-CV-000292G |
|  | ) |
| **v.** | ) **MEMORANDUM IN SUPPORT** |
|  | ) **OF DEFENDANTS' MOTION TO** |
|  | ) **STRIKE AND OBJECTIONS TO** |
| **DONALD L. EVANS, United States** | ) **PLAINTIFFS' FILING OF THIRD** |
| **Secretary of Commerce, et al.,** | ) **DECLARATION OF LARA J.** |
|  | ) **WOLFSON** |
| **Defendants.** | ) |
|  | ) |

Defendants Donald L. Evans, United States Secretary of Treasury, and William G.

Barron, Acting Director, United States Census Bureau (hereafter the "federal defendants"),

hereby respectfully object to plaintiffs' filing of the Third Declaration of Lara J. Wolfson, Ph.D.,

Regarding Plaintiffs' Acquisition of Data on Imputation of Data in Census 2000 (hereafter

"Wolfson III Decl."), and move that it be stricken for the reasons set forth below.

The parties in this case agreed to a briefing schedule under which briefing on the issues of

this case would be complete by August 14, 2001, when the defendants filed their reply briefs.

See Stipulated Scheduling Order dated May 4, 2001. Plaintiffs, through this Third Declaration of Lara J. Wolfson, are attempting to file additional argument in this case which is not contemplated by the stipulated briefing schedule. In addition, in her declaration, Dr. Wolfson advances a number of arguments that (1) are not factually based, but are advanced solely to refute defendants' arguments in their reply briefs; (2) are not within her knowledge; and/or (3) are immaterial. Plaintiffs should not be given another opportunity to attempt to rationalize their delay in filing this suit.

While the federal defendants did not raise a laches argument *per se* in their opening brief, the federal defendants addressed, at length, plaintiffs' failure to raise their claims in a timely fashion in Defendants' Opposition to Plaintiffs' Motion for a Scheduling Order dated May 2, 2001. When plaintiffs, in their reply, attempted to blame their delay in filing this suit on the federal defendants, the federal defendants were compelled, once again, to correct the record rather than act as an "empty chair" to which plaintiffs could point to justify their delay.

The documents discussed in the federal defendants' reply brief speak for themselves and require no further explanation from plaintiffs. It is clear from plaintiffs' proposed stipulation of material facts and motion for summary judgment in State of Utah v. Evans ("Utah I"), No. 2:01CV0023B, that plaintiffs were aware of imputation in January 2001. See Order Denying Plaintiffs' Motion for Leave to File a Third Amended Complaint, dated April 17, 2001 (hereafter "Order") at 3-4, attached to NC Mem. as Ex. B; plaintiffs' stipulations of material facts provided to the federal defendants on January 25, 2001, attached to Defs' Reply as Exhibit I. It is also clear from the discovery and FOIA requests made in connection with Utah I that plaintiffs did not

attempt to obtain information regarding imputation from the Census Bureau at that time.[1]  In

paragraph 13 of her Third Declaration, Dr. Wolfson states that "there was no public indication

that (a) any imputations had been conducted to add people to the apportionment count."

However, in the very next paragraph, she acknowledges that the Bureau used imputation in the

1998 Dress Rehearsal.  See Wolfson III Decl. ¶ 14.  Moreover, the Census Bureau's Census 2000

Operational Plan Using Traditional Census-Taking Methods (Jan. 1999) (A.R. C01752), which

was provided to Congress prior to Census 2000, including Utah's congressional delegation, who

are all plaintiffs in this case, states that the Census Bureau would again use imputation in Census

2000.

 The document primarily relied on by Dr. Wolfson and plaintiffs in their Motion to file a

Third Amended Complaint, DSSD 2000 Procedures and Operations Memorandum Series B-17,

Census 2000: Missing Housing Unit Status and Population Data (Feb. 28, 2001) (A.R. C01010-

28) (hereafter "B-17"), is dated February 28, 2001, and was available on the Census Bureau's

website on March 1, 2001.  Dr. Wolfson does not dispute this fact, and it even appears from her

discussion that plaintiffs may have been aware of B-17 on or about March 1, 2001.  Dr. Wolfson

---

[1]Dr. Wolfson makes the remarkable statement that plaintiffs did not make a FOIA request because Dr. Wolfson did not believe that the Census Bureau would respond in a timely fashion. As an initial matter, FOIA deadlines are governed by statute and agency actions are accorded a "presumption of regularity."  Citizens to Preserve Overton Park , 401 U.S. 402, 414 (1971). Secondly, there is no reason to believe that because the Census Bureau sought an extension to respond to one FOIA request, the Bureau would seek a similar extension for another.  In fact, Jeff Bosh of Sidley & Austin eventually did make FOIA requests for imputation-related information on April 19, 2001, and May 1, 2001.  The Census Bureau responded to those requests on May 4 and May 10, 2001, respectively.  See FOIA requests, attached to Defs' Reply as Exhibit J.

simply gives a convoluted explanation as to why she was unable to understand it. Once again, Dr. Wolfson does not explain why she or plaintiffs did not contact the Census Bureau for an explanation. In addition, Dr. Wolfson acknowledges that the Executive Steering Committee for Accuracy and Coverage Evaluation Policy ("ESCAP") report released on March 1, 2001, indicated that "imputations were performed in numbers large enough to potentially affect apportionment," (Wolfson III Decl. ¶19), but plaintiffs still made no attempt to obtain information at that time. Dr. Wolfson also offers new information with respect to the data in the March 13, 2001 Press Release attached to her second declaration as Exhibit 1. In her second declaration, Dr. Wolfson claimed that she was unable to obtain information about the numbers in the Press Release from anyone on the Monitoring Board. See Wolfson II Decl. ¶¶ 17 -21. However, in this third declaration, she states that she spoke with "Dr. Eugene Ericksen of Temple University, who then gave [her] the data file from which he had produced the original calculations in the press release." Wolfson III Decl. ¶ 28.

Despite all of the information available to plaintiffs prior to the March 28, 2001 oral argument in Utah I, and plaintiffs' stated ongoing efforts to obtain further information, when "plaintiffs' counsel was asked directly by the [Utah I] court whether there were any further amendments to the complaint, . . . counsel represented to the court that the Second Amended Complaint covered and represented plaintiffs' position." Order at 5. Dr. Wolfson does not and cannot explain why plaintiffs made the decision not to seek information about imputation through discovery or other means earlier in the Utah I litigation; why plaintiffs waited until April 13, 2001, to file their motion for leave to file an amended complaint; or why plaintiffs

represented to the <u>Utah I</u> court that there would be no further amendments to their complaint.  In

her second declaration, Dr. Wolfson states that plaintiffs did not even ask her to begin

investigating the issue of imputation until March 14, 2001, so she has no knowledge or

information concerning the reasons for plaintiffs' delay.  <u>See</u> Wolfson II Decl. ¶ 11.  The relevant

inquiry is not when *Dr. Wolfson* had knowledge of imputation and what efforts she may or may

not have made to learn more about it, but whether or not *plaintiffs* pursued their claims in a

timely fashion.  There is therefore no justification for plaintiffs' attempts to use Dr. Wolfson as a

vehicle for making further arguments as to why plaintiffs filed this suit so belatedly.

WHEREFORE, for all the reasons stated above, the federal defendants respectfully

request the Court strike the Third Declaration of Lara J. Wolfson, Ph.D., Regarding Plaintiffs'

Acquisition of Data on Imputation of Data in Census 2000.

Respectfully submitted,

STUART E. SCHIFFER
Acting Assistant Attorney General

SANDRA M. SCHRAIBMAN
AMY M. ALLEN
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, 901 E Street, N.W.
Washington, D.C.  20044
Telephone:  (202) 514-4523
Facsimile:  (202) 616-8202

Counsel for Defendants

Dated:  September 5, 2001

5

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2001, copies of the foregoing Defendants' Motion to

Strike and Objections to Plaintiffs' Filing of Third Declaration of Lara J. Wolfson and the

Memorandum in Support thereof were sent by Federal Express or telecopy to:

Raymond A. Hintze
Chief Civil Deputy Attorney General
236 State Capitol Building
Salt Lake City, Utah  84114

Tiare B. Smiley
Special Deputy Attorney General
State of North Carolina
114 W. Edenton Street
Raleigh, North Carolina  27603-1013

Gene C. Schaerr (by telecopy)
SIDLEY AUSTIN BROWN & WOOD
1501 K Street, NW
Washington, DC  20005
202-736-8711

Thomas R. Lee
1395 Canberra Drive
Lindon, Utah  84042


_____
AMY M. ALLEN